Civil Action No.: 1:26-cv-01008-JLH

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

DIGITAL ANCHOR HOLDINGS LIMITED, Appellant,

v.

FTX RECOVERY TRUST and FTX DIGITAL MARKETS, LTD.,

Appellees,

ON APPEAL FROM ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

# BRIEF OF APPELLANT DIGITAL ANCHOR HOLDINGS LIMITED

**CONNOLLY GALLAGHER LLP**
Karen C. Bifferato (DE Bar No. 3279)
1201 N. Market Street, 20th Floor
Wilmington, DE 19801
Telephone: (302) 888-6221
kbifferato@connollygallagher.com

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**
Karen R. King (admitted *pro hac vice*)
Peter Menz (admitted *pro hac vice*)
Jessica C. Salley (admitted *pro hac vice*)
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
kking@maglaw.com
pmenz@maglaw.com
jsalley@maglaw.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012(a) of the Federal Rules of Bankruptcy Procedure and Rule 7.1(a)(1) of the Federal Rules of Civil Procedure, Digital Anchor Holdings Limited hereby states that it is a privately-owned company, and that it has no parent corporation and no publicly-held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

STATEMENT OF JURISDICTION ........ 1

STATEMENT OF ISSUES ........ 1

STATEMENT OF THE CASE ........ 2

SUMMARY OF ARGUMENT ........ 7

ARGUMENT ........ 9

- I. THE BANKRUPTCY COURT ERRED IN DECIDING ARBITRABILITY, A QUESTION THAT WAS DELEGATED TO THE HONG KONG TRIBUNAL ........ 9

- II. THE BANKRUPTCY COURT ERRED IN ASSERTING PERSONAL JURISDICTION OVER DIGITAL ANCHOR DESPITE THE TERMS OF THE ARBITRATION AGREEMENT ........ 15

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brayman Constr. Corp. v. Home Ins. Co.*,
319 F.3d 622 (3d Cir. 2003) ....................6

*Contec Corp. v. Remote Solution, Co.*,
398 F.3d 205 (2d Cir. 2005) ....................13

*Frederick v. L. Off. of Fox Kohler & Assocs. PLLC LLC*,
852 F. App'x 673 (3d Cir. 2021) ....................12

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019).................... 13, 14

*Hepp v. Facebook*,
14 F.4th 204 (3d Cir. 2021) ....................16

*In re Yellow Corp.*,
2024 WL 1313308 (Bankr. D. Del. 2024)....................14

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006)....................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................15

*Olin Holdings Ltd. v. State*,
73 F.4th 92 (2d Cir. 2023) ....................13

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ....................13

*Pak v. EoCell, Inc.*,
No. 20-cv-05791-VC, 2020 WL 6318725 (N.D. Cal. Oct. 28, 2020)....................12

*Panajoti Consulting, LLC v. BuyHive USA, Inc.*,
No. 22-10487, 2022 WL 3645993 (E.D. Mich. Aug. 24, 2022) ....................12

*Puleo v. Chase Bank USA, N.A.*,
605 F.3d 172 (3d Cir. 2010) ....................6

*Townsend Ventures, LLC v. Hybrid Kinetic Grp. Ltd.*,
No. CV GLR-17-130, 2017 WL 3730345 (D. Md. Aug. 30, 2017).....................12

*Zirpoli v. Midland Funding, LLC*,
48 F.4th 136 (3d Cir. 2022) .........................................................................13

**Statutes**

11 U.S.C. § 101 ..........................................................................................8

28 U.S.C. §§ 1334(b) ....................................................................................7

9 U.S.C. § 16(a)(1)(B) .................................................................................7

**Rules**

Federal Rule of Bankruptcy Procedure 8015(h) ...........................................21

Rule 7.1(a)(1) of the Federal Rules of Civil Procedure...................................2

Rule 8012(a) of the Federal Rules of Bankruptcy Procedure..........................2

## STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the District of Delaware had subject-matter jurisdiction over the underlying adversary proceeding, *FTX Recovery Trust, et al. v. Binance Holdings Limited, et al.*, Adv. Pro. No. 24-50222 (KBO), pursuant to 28 U.S.C. §§ 1334(b) and 157(b). On July 24, 2026, the Bankruptcy Court entered the order denying Appellant Digital Anchor Holdings Limited's Motion to Compel Arbitration, Dismiss, or Abstain. A419–49.[1] The Bankruptcy Court's ruling on arbitration is an interlocutory order appealable as of right under 9 U.S.C. § 16(a)(1)(B). Digital Anchor timely appealed on August 7, 2026. A413–14.

## STATEMENT OF ISSUES

1. Whether the Bankruptcy Court erred in deciding a question of arbitrability that was delegated exclusively to a Hong Kong arbitral panel. The Bankruptcy Court's denial of a motion to compel arbitration is subject to plenary, or *de novo*, review. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010); *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 624–25 (3d Cir. 2003) (plenary review of questions of law including questions of contract and statutory interpretation).

[1] Page numbers beginning with "A" refer to the Appendix concurrently filed with this Opening Brief. Citations to "Adv. D.I." refer to the docket for this adversary action in the U.S. Bankruptcy Court for the District of Delaware, Adv. Pro. No. 24-50222 (KBO). Citations to "D.I." refer to the docket of the underlying bankruptcy action in Delaware, *In re: FTX Trading Ltd., et al,* Case No. 22-11068 (KBO).

2. Whether the Bankruptcy Court erred in asserting personal jurisdiction over Digital Anchor despite its clear designation of the law and jurisdiction of Hong Kong for purposes of disputes arising from the transaction. The Bankruptcy Court's "conclusions of law" are reviewed "under a *de novo* standard." *In re Mintze*, 434 F.3d 222, 227 (3d Cir. 2006) (quoting *Halper v. Halper*, 164 F.3d 830, 835 (3d Cir. 1999)); *Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 167 (3d Cir. 2012) (*de novo* review of decisions "with respect to personal jurisdiction" and "concerning the applicability and scope of an arbitration agreement").[2]

**STATEMENT OF THE CASE**

On November 11, 2022, FTX Trading Ltd. and affiliated entities (the "Debtors") filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. On October 8, 2024, the Bankruptcy Court confirmed the Debtors' plan of reorganization. D.I. 26404.

[2] This appeal of the order denying Digital Anchor's motion to compel arbitration is as of right. 9 U.S.C. § 16(a)(1)(B); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) ("When a federal district court denies a motion to compel arbitration, the losing party has a statutory right to an interlocutory appeal.") (citing 9 U.S.C. § 16(a)). Digital Anchor also filed a separate motion for leave to allow interlocutory appeal of the Bankruptcy Court's July 24, 2026 Opinion and Order. A486; Adv. D.I. 207. Some of the issues in that proposed appeal overlap with issues in this appeal. *Id.* Other defendants also have filed motions for leave to allow interlocutory appeal. A485–86; Adv. D.I. 203, 208. Given the overlap in facts and law, Digital Anchor believes the separate motions for interlocutory appeals should be granted and all appeals should be heard together.

On November 10, 2024, Non-Debtor FTX Digital Markets Ltd. and Debtors FTX Trading Ltd., Alameda Research LLC, Alameda Research Ltd., West Realm Shires Inc., West Realm Shires Services Inc., Clifton Bay Investments LLC, Cottonwood Grove Ltd., Euclid Way Ltd., and Paper Bird Inc. initiated this adversary proceeding against Binance Holdings Ltd., Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited (collectively, "BHL Defendants"), as well as Binance Capital Management Co. Ltd. (now known as Digital Anchor), and individuals Changpeng Zhao, Dinghua Xiao, and Samuel Wenjun Lim (together with BHL Defendants and Digital Anchor, the "Defendants"). A2–44 ("Complaint"). In their Complaint Plaintiffs allege that Digital Anchor is a company established under the laws of the British Virgin Islands and that it signed the 2021 contract (the "FTX Repurchase Agreement") that is at the center of this adversary proceeding. A8, 13 (Compl. ¶ 22, 41). After the filing of the Complaint, the FTX Recovery Trust substituted in the place of the Debtor plaintiffs, leaving the FTX Recovery Trust and FTX Digital Markets Ltd. (together, "Plaintiffs") as the only plaintiffs in this adversary proceeding. D.I. 29554.

Through Counts I through V of the Complaint, the FTX Recovery Trust seeks to avoid and recover from all Defendants the consideration paid on account of the FTX Repurchase Agreement (the "Fraudulent Transfer Claims"). A29–38 (Compl. ¶¶ 80–128). The FTX Recovery Trust contends that those transactions

constituted fraudulent transfers under the Bankruptcy Code and should be reversed because FTX Trading was allegedly "balance-sheet insolvent" at the time of the transactions and the "repurchased FTX Trading shares therefore had no value based on a proper accounting of FTX Trading's assets and liabilities." A14 (Compl. ¶ 42.) Separately, Counts VI through IX of the Complaint assert claims under state law against the BHL Defendants and Mr. Zhao for purported injuries stemming from allegedly false or misleading tweets ("the False Statement Claims"). A38–42 (Compl. ¶¶ 129–44).

Notably, the FTX Repurchase Agreement was signed by Digital Anchor, FTX Trading Ltd., and Euclid Way Ltd.—all non-U.S. companies—and is governed by Hong Kong law with a broad arbitration clause designating a Hong Kong arbitral tribunal to resolve any disputes arising out of the agreement:

> **4.7 Governing Law; Jurisdiction.** This Agreement shall be governed by the internal laws of Hong Kong, without regard to conflict of law principles that would result in the application of any law other than such laws. ***Any controversy or claim arising out of or relating to this Agreement or the interpretation, breach, termination or validity hereof shall be resolved through arbitration in accordance with the Hong Kong International Arbitration Centre Arbitration Rules.*** There shall be three arbitrators. Each of Purchaser and Seller has the right to appoint one arbitrator and the third arbitrator shall be appointed by the Hong Kong International Arbitration Centre. The language to be used in the arbitral proceedings shall be English and the seat of the arbitration shall be Hong Kong.

A91–107 ("FTX Repurchase Agreement" § 4.7) (emphasis added).

On May 16, 2025, Digital Anchor filed a Motion to Compel Arbitration and Motion to Dismiss, arguing that: (1) the FTX Recovery Trust's Fraudulent Transfer Claims cannot be litigated in Bankruptcy Court because the transfers at issue were made pursuant to the FTX Repurchase Agreement, which mandates that "[a]ny controversy or claim arising out of or relating to [the FTX Repurchase] Agreement" be arbitrated in Hong Kong, A97 (FTX Repurchase Agreement § 4.7); and (2) the Complaint should be dismissed because (i) Plaintiffs fail to establish personal jurisdiction over Digital Anchor, (ii) the Bankruptcy Court lacks subject-matter jurisdiction over the False Statement Claims because the claims bear no relation to the bankruptcy proceeding, and alternatively should permissively abstain from hearing these claims, (iii) Plaintiffs fail to plead the essential elements of the Fraudulent Transfer Claims and False Statement Claims. A53–86.

Separately, the BHL Defendants and each individual defendant filed motions to dismiss on various grounds, including lack of personal jurisdiction, failure to plead viable claims, and the Bankruptcy Code Section 546(e) safe harbor. A473, 475–76; Adv. D.I. 66–67; 92–94; 95–97; 104–05. All defendants joined in Digital Anchor's motion to compel arbitration. Adv. D.I. 67 at 21 n.8; Adv. D.I. 93 at 24; Adv. D.I. 96 at 27; Adv. D.I. 105 at 11 (adopting and incorporating by reference Digital Anchor's motion to compel arbitration).

After full briefing and oral argument on the motions to dismiss, on July 24, 2026, the Bankruptcy Court issued an Opinion and Order, denying Digital Anchor's and the other defendants' motions to compel arbitration or abstain, and denying in part and granting in part the motions to dismiss. A449. Defendants Lim and Xiao were dismissed from the case entirely. *Id.* Counts VI through IX of the Complaint were also dismissed. *Id.* However, the Bankruptcy Court allowed the Fraudulent Transfer Claims to proceed against BHL Defendants, Digital Anchor, and Mr. Zhao. A434–38.

In rejecting Digital Anchor's motion to compel arbitration, the Bankruptcy Court ruled that Plaintiffs are "not bound" by the arbitration provision of the FTX Repurchase Agreement—despite the fact that they are standing in the shoes of the Debtor—because fraudulent transfer claims are "creatures of statute, available in bankruptcy solely for the benefit of creditors of the debtor." A434. Therefore, "when the debtor brings an avoidance action, the arbitration clause in a pre-bankruptcy contract does not apply." *Id.*

On August 7, 2026, Digital Anchor filed its Notice of Appeal as of right with respect to the Bankruptcy Court's denial of the motion to compel arbitration, and a motion to stay proceedings pending resolution of that appeal. A483–84; Adv. D.I. 183, 185.

On August 28, 2026, Digital Anchor filed (i) a notice of interlocutory appeal of the personal jurisdiction holding in the Bankruptcy Court's Opinion and Order, A485; Adv. D.I. 205; and (ii) a motion seeking leave to allow an interlocutory appeal of the personal jurisdiction holding in the Bankruptcy Court's Opinion and Order, A486; Adv. D.I. 207. The BHL Defendants and Mr. Zhao also filed notices of interlocutory appeal, motions seeking leave to allow an interlocutory appeal, and motions for stay pending appeal. A485–86; Adv. D.I. 201, 203, 208–09, 211–12. Briefing on the motions for interlocutory appeal is ongoing.

## SUMMARY OF ARGUMENT

The FTX Repurchase Agreement expressly delegates resolution of all disputes arising from the repurchase transaction, including threshold questions of arbitrability, to a Hong Kong arbitrator applying Hong Kong law. The Supreme Court has made clear that where, as here, an arbitration agreement expressly delegates questions of arbitrability to the arbitral panel, a court cannot override that delegation simply because it believes the underlying dispute is not arbitrable. The Bankruptcy Court failed to grapple with that binding precedent, citing decades-old cases that are factually distinguishable and did not, by definition, address the Supreme Court's controlling standard. It also erred in applying U.S. law to find an exception to arbitration, grounded in a unique feature of the U.S. Bankruptcy Code. Whether the arbitration provision covers fraudulent conveyance claims is a question

for the Hong Kong arbitral panel, governed by Hong Kong law, to decide, as the parties explicitly contemplated in drafting the FTX Repurchase Agreement.

The Bankruptcy Court further erred in asserting personal jurisdiction over Digital Anchor, including because it relied on tangential details of the FTX Repurchase transaction while ignoring the plain terms of the agreement itself.[3] Allegations that a U.S. lawyer was involved in drafting the agreement, or that tokens or funds used to fund the transaction originated in the U.S., have no relevance to the jurisdictional analysis. They certainly do not outweigh the clear intent of Digital Anchor *not* to be governed by U.S. law or to be subjected to U.S. litigation on disputes arising from the transaction. The arbitration provision, in conjunction with the fact that Digital Anchor is a foreign entity engaging with other foreign entities in an agreement governed by foreign law with delegation to a foreign arbitral tribunal, demonstrates the Bankruptcy Court's error in finding personal jurisdiction over Digital Anchor.

[3] The Bankruptcy Court also engaged in an unprecedented aggregation of allegations across multiple defendants, including Digital Anchor, to find personal jurisdiction over the collective group. The error of this analysis is the subject of motions for interlocutory appeal by multiple defendants, including Digital Anchor. This appeal addresses only the portion of the Bankruptcy Court's flawed analysis that relates to the FTX Repurchase Agreement.

## ARGUMENT

### I. THE BANKRUPTCY COURT ERRED IN DECIDING ARBITRABILITY, A QUESTION THAT WAS DELEGATED TO THE HONG KONG TRIBUNAL

Because the FTX Repurchase Agreement has an arbitration and delegation clause, and was signed by FTX Recovery Trust's predecessor in interest, under *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), the Bankruptcy Court should have granted Digital Anchor's motion to compel arbitration and should not have reached the question of whether fraudulent transfer claims are arbitrable under U.S. law. The Bankruptcy Court's reliance on pre-*Henry Schein* caselaw to decide the merits of arbitrability was erroneous.

As an initial matter, the FTX Repurchase Agreement expressly binds the signatories "***and their respective successors, heirs, personal representatives, executors and permitted assigns***." A96–97 (FTX Repurchase Agreement § 4.4) (emphasis added). There is no dispute that the agreement is valid or that Plaintiff FTX Recovery Trust is the successor and/or assignee of signatories FTX Trading Ltd. and Euclid Way Ltd. *See* D.I. 26404 ¶¶ 51, 106; *see also* D.I. 29390 ¶¶ 2, 5. Indeed, the Bankruptcy Court made no findings to the contrary. Contrary to Plaintiffs' suggestion (Adv. D.I. 247 at 22), there is no question of contract formation. Plaintiffs' reliance on *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020) for the proposition that courts retain

power to decide questions of contract formation is therefore misplaced. In contrast to that case, where the validity of the agreement was disputed based on an alleged fraud, formation of a valid agreement is not an issue here. *Id.* at 392. The plaintiff—FTX Recovery Trust—is a party to that agreement, but the beneficiaries of its fraudulent transfer claims—the creditors—are not. The question at hand is whether a valid arbitration agreement, which otherwise binds the plaintiff as successor/assignee of the debtor, excludes claims created by U.S. bankruptcy code for the benefit of creditors. A434. This is a question of scope.

As to scope, the FTX Repurchase Agreement requires that "[a]ny controversy or claim arising out of or relating to this Agreement" must be arbitrated in Hong Kong, under Hong Kong law, and "in accordance with the Hong Kong International Arbitration Centre [("HKIAC")] Arbitration Rules." A97 (FTX Repurchase Agreement § 4.7.) It further provides that questions of interpretation or validity shall also be resolved through arbitration in accordance with the HKIAC Rules. *Id.* The HKIAC Rules, in turn, expressly provide that "[t]he arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement." A184 (2018 HKIAC Rules § 19.1); *see also* A260 (2024 HKIAC Rules § 19.1) (same). Federal courts have concluded that such language evinces the intent to delegate questions of arbitrability

to the arbitrator.[4] That conclusion is consistent with other decisions considering other arbitral rules, which uniformly find that similar language accomplishes an effective delegation.[5]

[4] District courts considering the delegation language in the HKIAC Rules have held that questions of arbitrability must go to the arbitrator. *See, e.g.*, *Panajoti Consulting, LLC v. BuyHive USA, Inc.*, No. 22-10487, 2022 WL 3645993, at *2 (E.D. Mich. Aug. 24, 2022); *Pak v. EoCell, Inc.*, No. 20-cv-05791-VC, 2020 WL 6318725, at *1 (N.D. Cal. Oct. 28, 2020); *Townsend Ventures, LLC v. Hybrid Kinetic Grp. Ltd.*, No. GLR-17-130, 2017 WL 3730345, at *5 (D. Md. Aug. 30, 2017).

[5] *See Frederick v. L. Off. of Fox Kohler & Assocs. PLLC LLC*, 852 F. App'x. 673, 676 (3d Cir. 2021) ("Delaware courts hold that a contract's general provision 'for arbitration of all disputes' and its incorporation of 'rules that empower arbitrators to decide arbitrability[,]' such as the AAA rules incorporated here, 'evidences a clear and unmistakable intent to submit [all issues, including] arbitrability issues[,] to an arbitrator.'") (quoting *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006)); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013) ("We see no reason to deviate from the prevailing view that incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability. We hold that as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator."); *Olin Holdings Ltd. v. State*, 73 F.4th 92, 106 (2d Cir. 2023) (determining that Libya "'clearly and unmistakably' agreed to send questions of arbitrability, including challenges to the validity and enforceability of the agreement, to the Tribunal in the first instance" because the agreement at issue "expressly authorizes [] investors to submit disputes arising under the [agreement] to the 'Arbitral Tribunal of the International Chamber of Commerce [ICC]'" and the ICC Rules provide that "'any question of jurisdiction . . . shall be decided directly by the arbitral tribunal'").

Both Plaintiffs and the Bankruptcy Court rely heavily on a small set of U.S. cases finding that a bankruptcy trustee is not bound by debtor's contractual commitments because the trustee is serving the interests of the creditors. These cases are beside the point, however, because the first order question is whether arbitrability—i.e., interpretation and adjudication on the scope of the arbitration agreement—must be decided by the Hong Kong arbitral tribunal under Hong Kong law. The Bankruptcy Court's decision to usurp the tribunal's domain and carve fraudulent transfer claims out of the arbitration agreement runs afoul of binding Supreme Court and Third Circuit precedent. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein,* 586 U.S. at 68. This is "true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*. Where, as here, there is a valid delegation clause, a court "must only determine if the parties . . . clearly and unmistakably expressed an agreement to arbitrate the issue of arbitrability." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 145 (3d Cir. 2022). Applying *Henry Schein* and *Zirpoli*, the Bankruptcy Court's sole inquiry should have been whether the parties clearly and unmistakably agreed to delegate arbitrability to the arbitrator. Because the incorporation of the HKIAC Rules explicitly authorizes arbitrators to decide questions of arbitrability, the Bankruptcy Court was not

empowered to override the plain language of the agreement. Instead, it was compelled to send the dispute to arbitration.

Notably, none of the cases cited by the Bankruptcy Court for the proposition that fraudulent transfer claims are not subject to arbitration did not contend with any delegation clause or arbitration tribunal rules. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153–55 (3d Cir. 1989); *In re Oakwood Homes Corp*., No. 02–13396, 2005 WL 670310, at *2–5 (Bankr. D. Del. Mar. 18, 2005); *In re Yellow Corp*., No. 23-11069, 2024 WL 1313308, at *7–8 (Bankr. D. Del. Mar. 27, 2024); A434 n.107–10. *Hays* and *Oakwood Homes* precede *Henry Schein*, which altered the analysis by establishing a categorical rule for arbitration contracts with delegation clauses, requiring that questions of arbitrability under such contracts must be determined by the arbitrator. 586 U.S. at 68. That holding is not limited to commercial disputes; it applies with equal force in bankruptcy. *See id.* The categorical rule of *Henry Schein* thus supersedes or limits *Hays* as applied to contracts containing a delegation clause, an interaction the Third Circuit has not yet had occasion to address.

Moreover, *Hays* and its progeny also involved arbitration agreements governed by U.S. law, as opposed to Hong Kong law. It makes no sense for the U.S. Bankruptcy Court to apply U.S. law, to find an exception to arbitration for claims stemming from a unique feature of the U.S. Bankruptcy Code, and then to conclude

that the arbitration agreement (and its choice of law and forum) is not binding. The circular nature of that analysis is precisely why a Hong Kong tribunal should adjudicate arbitrability of Plaintiffs' claim rather than the U.S. Bankruptcy Court. It is far from clear whether, under Hong Kong law, a party to an arbitration agreement (or the successor/assignee of that party) would be released from an obligation to arbitrate merely because the U.S. Bankruptcy Code has created a special claim for the benefit of third-party creditors. The parties to the FTX Repurchase Agreement bargained for the HKIAC as the forum for any claims related to that agreement; Digital Anchor is entitled to have the Hong Kong arbitral tribunal decide whether its contractual right to arbitration (under Hong Kong law) can be overridden by the U.S. Bankruptcy Code or U.S. law.

In refusing to send the question to the arbitrator, the Bankruptcy Court has ignored long-standing Supreme Court precedent that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Indeed, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gay v. CreditInform*, 511 F.3d 369, 379 (3d Cir. 2007) (quoting *Johnson v. West Suburban Bank*, 225 F.3d 366, 371 (3d Cir. 2000)). Given this well-established preference for arbitration, "[a] court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator,

'even if it appears to the court to be frivolous.'" *Henry Schein*, 586 U.S. at 68 (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649–50 (1986)). This "principle applies with equal force to the threshold issue of arbitrability." *Id.* at 69.

## II. THE BANKRUPTCY COURT ERRED IN ASSERTING PERSONAL JURISDICTION OVER DIGITAL ANCHOR DESPITE THE TERMS OF THE ARBITRATION AGREEMENT

Digital Anchor is a foreign corporation established under the laws of the British Virgin Islands. A8 (Compl. ¶ 22). The Complaint does not allege any contact by Digital Anchor with the United States or efforts to obtain the benefits and protections of the laws of the United States. Quite the opposite. The Complaint specifically alleges that Digital Anchor was a BVI company and that it entered into the FTX Repurchase Agreement, which designates Hong Kong law and Hong Kong arbitration for any disputes. A13 (Compl. ¶ 41). These facts, as alleged, are evidence of Digital Anchor's intention *not* to be subject to U.S. law or the U.S. courts. It entered into an agreement with other non-U.S. parties that explicitly invokes the law and jurisdiction of Hong Kong, and directs that all disputes arising out of the agreement must be decided by a Hong Kong arbitral tribunal under HKIAC Rules. A97 (FTX Repurchase Agreement § 4.7).

The Bankruptcy Court took the unprecedented approach of aggregating allegations across all Defendants to conclude that it had personal jurisdiction over

the collective. It went on to make unsupported and plainly erroneous findings. For example, the Bankruptcy Court cited allegations surrounding the sale of shares in West Realm Shires, Inc., another FTX-related entity, as a basis for jurisdiction, but Digital Anchor was not a party to that transaction. A429. The Bankruptcy Court also imputed U.S. contacts to Digital Anchor based on admissions in criminal and CFTC actions to which Digital Anchor was not a party.[6] A428–29. These and other errors are the subject of motions for interlocutory appeal by multiple defendants.

The jurisdictional findings based on the FTX Repurchase Agreement are particularly problematic because they run counter to the explicit language of that agreement. The Bankruptcy Court cited allegations that:

- FTX paid for the share repurchase using "BUSD, a cryptocurrency that could only be minted by a New York trust;"
- The share repurchase was negotiated with "FTX's U.S.-based counsel;" and
- The transaction was funded by "Alameda, the United States silo of FTX, using their own exchange operating in the United States." A429.

[6] Curiously, the Bankruptcy Court noted that defendant Mr. Xiao "was not a party to the CFTC Action and is not alleged to have had any involvement in facilitating Binance's operations within the United States," so it did not consider the "plea agreements or consent orders" in assessing personal jurisdiction as to Mr. Xiao. A432 n.97. Although the same is true of Digital Anchor, the Bankruptcy Court inexplicably did not apply the same logic, instead considering allegations that had nothing to do with Digital Anchor in asserting personal jurisdiction over it.

Reliance on these tangential allegations as a basis for personal jurisdiction is at odds with longstanding jurisprudence on constitutional due process. "We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). We are aware of no such precedent holding that engaging with a counterparty's U.S. counsel or receiving funds that originated in the U.S. constitutes "a deliberate act of reaching out to do business" in the United States or a "strong relationship among the defendant, the forum, and the litigation."[7] *Hepp v. Facebook*, 14 F.4th 204, 207–08 (3d Cir. 2021)

---

[7] Indeed, courts have held that mere communications with lawyers in the United States do not establish personal jurisdiction. *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 832–34 (N.Y. 2007) (defendant's "serv[ice of] papers upon plaintiff at her New York City apartment" for an English action, and the fact that "defendant's English lawyers contacted plaintiff at her home in New York via mail and e-mail," do not "establish that defendant purposefully availed himself of the privileges of and benefits of New York's laws"); *Fischbarg v. Doucet*, 880 N.E.2d 22, 29 (N.Y. 2007) (jurisdiction may exist where the claim "arises out of" legal representation, such as in action to collect attorney's fees, but not where it is "merely coincidental"). The use of forum-based counsel is not relevant except in disputes arising from the representation, to which counsel is a party. *See, e.g.*, *Remick v. Manfredy*, 238 F.3d 248, 252 (3d Cir. 2001); *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1188 (D.C. Cir. 2013). The fact that FTX used U.S. counsel to negotiate the FTX Repurchase Agreement has no bearing on a court's jurisdiction over Digital Anchor.

Likewise, merely receiving funds that originated in a forum is insufficient to establish minimum contacts with that forum. *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 214 (3d Cir. 1984) (holding that there is "no expectation of submission to the jurisdiction of [the forum] courts" where defendant's only forum contact is receiving funds from a forum bank,).

(quotations and citations omitted). Certainly, such tangential contacts do not equate to "invok[ing] the benefits and protections of [the forum's] laws" for purposes of personal jurisdiction. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (citation omitted). The two cases cited by the Bankruptcy Court do not hold otherwise. In *Arcapita*, jurisdiction followed because the defendant itself "purposely select[ed] and use[d] a correspondent bank account to effectuate a particular transaction." *Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahr. Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016). Here, by contrast, the Complaint alleges that it was Alameda Ltd. that transferred the consideration from an Alameda Ltd.-controlled account on the Binance.com exchange, A14 (Compl. ¶ 43), and nothing in the Complaint alleges that Digital Anchor selected, owned, or operated that account or the exchange. Similarly, the Bankruptcy Court's reliance on *Grand Entertainment* for the proposition that "contract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum" is misplaced. A429-30, citing *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993). *Grand Entertainment* rested firmly on contacts directed by the *defendants* to the forum, including their "negotiations for an agreement that would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum." *Id.* at 482–83. In contrast, Digital Anchor's counterparties to the FTX Repurchase Agreement were not forum

residents; that the counterparties (not Digital Anchor) chose an American lawyer to assist them with the transaction does not constitute a deliberate effort by Digital Anchor to target the U.S. A7-8.

It offends principles of equity and due process for the Bankruptcy Court to base its jurisdictional analysis on certain aspects of the negotiation and transaction, while ignoring the actual language of the FTX Repurchase Agreement itself, and refusing to enforce the contractual commitments of that agreement. Digital Anchor could not reasonably have anticipated that a contract and transaction outside the United States, in which non-U.S. entities agreed to be bound by Hong Kong law and have disputes resolved by Hong Kong arbitrators, would result in it being forced to defend itself in the U.S. against claims that are a unique creation of U.S. law. *Hasson*, 114 F.4th at 186 ("[T]he exercise of jurisdiction over the defendant must comport[] with traditional notions of fair play and substantial justice such that the defendant should reasonably anticipate being haled into court in that forum.") (quotations and citations omitted).

This Court should reverse the Bankruptcy Court's error in finding personal jurisdiction over Digital Anchor and, accordingly, direct the parties to bring their disputes to the designated Hong Kong forum.

## CONCLUSION

For all the reasons discussed above, this Court should reverse the Bankruptcy Court's Opinion and Order and mandate arbitration of all remaining Counts in the Complaint.

Dated: October 8, 2026
Wilmington, Delaware

*/s/ Karen C. Bifferato*
**CONNOLLY GALLAGHER, LLP**
Karen C. Bifferato (DE Bar No. 3279)
1201 N. Market Street, 20th Floor
Wilmington, DE 19801
Telephone: (302) 888-6221
kbifferato@connollygallagher.com

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**
Karen R. King (admitted *pro hac vice*)
Peter Menz (admitted *pro hac vice*)
Jessica C. Salley (admitted *pro hac vice*)
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
kking@maglaw.com
pmenz@maglaw.com
jsalley@maglaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), I certify that this brief complies with the typeface and type volume requirements of Federal Rules of Bankruptcy Procedure 8015(a)(5) and 8015(a)(7)(B). This brief was prepared using Microsoft Word using Times New Roman 14-point font. According to Microsoft Word's word-count function, this brief contains 4920 words, including footnotes and headings and excluding those portions of the brief listed in Federal Rule of Bankruptcy Procedure 8015(g).

Date: October 8, 2026

*/s/ Karen C. Bifferato*
Karen C. Bifferato (No. 3279)